## W. J. Brennan v. William P. McEvoy & Company.

## F. J. Lewis Manufacturing Company, Appellant, v. Western Clock Company, Appellee.

### Gen. No. 6,101.

**1.** MECHANICS' LIENS, § 76*—*when material men protected by notice of claim furnished to owner by contractor.* Under section 5 of the Mechanics' Liens Act of 1903 (J. & A. ¶ 7143), requiring an owner before making payment to a contractor to require of such contractor a verified statement in writing of the names of all parties furnishing material or labor, with the amounts due or to become due, a statement voluntarily furnished to the owner by the contractor, if sufficient to comply with the statute, will protect a material man named in such notice.

**2.** MECHANICS' LIENS—*when notice of claims furnished by contractor to owner insufficient.* Under section 5 of the Mechanics' Liens Act of 1903 (J. & A. ¶ 7143), requiring certain notice to be given to an owner before any payments are made to a contractor, a notice which fails to set out the amount due or to become due to any person furnishing labor or material named in such statement is insufficient to comply with the statute.

**3.** MECHANICS' LIENS, § 73*—*what is effect of owner making payment to contractor without receiving statement of claims.* An owner who makes payment to a contractor without requiring or receiving from such contractor a statement as required by section 5 of the Mechanics' Liens Act of 1903 (J. & A. ¶ 7143), does so at his peril.

**4.** MECHANICS' LIENS, § 6*—*necessity that statute be followed.* One claiming a mechanic's lien must rely wholly on the statute for his recovery, since such liens are not recognized either at common law or in equity in the absence of statute.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Brennan v. McEvoy & Co., 196 Ill. App. 336.

5. Mechanics' liens, § 5*—*statute strictly construed.* Since mechanics' liens are unknown at common law or in equity, a statute giving such right must be strictly construed, and one claiming such a lien must show a compliance with the provisions of such statute.

6. Mechanics' liens, § 73*—*when act of builder making payment to contractor without requiring statement of claims of no avail against subcontractor.* A builder who makes payment to a contractor without requiring the statement required in section 5 of the Mechanics' Liens Act (J. & A. ¶ 7143) cannot claim credit for the amounts of such payments as against a subcontractor, where it affirmatively appears that the subcontractor gave the notice required by section 32 of the same act (J. & A. ¶ 7162).

7. Mechanics' liens—*when owner may rely upon statement of claims furnished by contractor as against subcontractor.* Under section 32 of the Mechanics' Liens Act of 1903 (J. & A. ¶ 7162), a subcontractor may bind the owner by giving the notice provided by such statute · notwithstanding that a notice has been given by the contractor under section 5 of the same act (J. & A. ¶ 7143), but in the absence of any such notice by such subcontractor the owner has the right to rely on such statement furnished by the contractor unless such owner knows from any source that the statements in such notice by the contractor are false, but in such case such subcontractor is protected to the extent, if any, to which an amount is named in such notice as due or to become due to such subcontractor.

8. Mechanics' liens—*when duty of subcontractor to see that notice furnished by contractor to owner is complete.* Under sections 5 and 32 of the Mechanics' Liens Act of 1903 (J. & A. ¶¶ 7143, 7162), a subcontractor, if he fails to furnish to the owner a sufficient notice as required by such section 32, has the burden of seeing that a notice has been furnished by the contractor to such owner under such section 5, which is sufficient to protect such subcontractor.

9. Mechanics' liens, § 61*—*when subcontractor's right to lien not defeated by failure of owner to obtain from contractor statement of claims before paying contractor.* Under sections 5 and 32 of the Mechanics' Liens Act of 1903 (J. & A. ¶¶ 7143, 7162), the right of a subcontractor to a lien cannot, where both owner and subcontractor fail to comply with the statute, be made dependent on the omission of the owner to perform the duty of requiring from the contractor, before making payment to him, of a statement showing the claims of subcontractors and of those furnishing material or labor, together with the amounts due or to become due as required by such section 5, since the purpose of the statute was both to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

give notice to the owner of liens which might be established against his premises and to protect the claimants of such liens.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed October 20, 1915.

McENIRY & McENIRY, for appellant.

CLARENCE GRIGGS and J. E. COLEMAN, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellee, Western Clock Company, in the spring of 1912, contracted with Wm. P. McEvoy & Company, builders, for the erection of a building on its premises in the City of Peru, Illinois, and an addition thereto, for the agreed price of $103,669.14. In the course of construction the builder became indebted to one Brennan for labor, and also to F. J. Lewis Manufacturing Company, the appellant, in a balance of $1,043.68 for material furnished on and prior to December 27, 1912. Brennan on May 28, 1913, filed a petition for a mechanic's lien upon the premises, making Wm. P. McEvoy & Company and the Western Clock Company parties defendant. Appellant filed an intervening petition setting up its claim, October 18, 1913, and filed an amendment thereto April 1, 1914. The cause was submitted to the master in chancery, who took proofs and reported the same to the court with his conclusion that appellant was not entitled to a lien on the premises because it did not comply with the statute requiring it to serve notice of its claim on the owner. The chancellor sustained the master's report and entered a decree (which recites that it is based on the master's report and on oral and documentary evidence) dismissing appellant's petition, from which decree this appeal is taken.

There is no dispute about the facts. The controversy arises over the construction of three sections of our Mechanics' Liens Act of 1903. Section 5 of that Act (J. & A. ¶ 7143) makes it the duty of the owner to require of the contractor, before making any payment to him, a verified statement in writing of the names of all parties furnishing material or labor, and of the amounts due or to become due, each.

Section 32 (J. & A. ¶ 7170) provides that no payments to the contractor shall be regarded as rightfully made as against the subcontractor, laborer or party furnishing labor or materials if made by the owner without exercising and enforcing the rights and powers conferred upon him in section 5 of the Act.

Section 24 (J. & A. ¶ 7162) provides that subcontractors, or party furnishing labor or material, may at any time after making his contract with the contractor, and shall within sixty days after the completion thereof, cause a written notice of his claim, and the amount due or to become due thereunder, to be personally served on the owner or his agent: Provided, such notice shall not be necessary when the statement of the contractor provided for in section 5 shall serve to give the owner notice of the amount due and to whom due, but where that statement is incorrect as to the amount, the subcontractor or material man shall be protected to the extent of the amount there named as due or to become due to him.

Appellant did not serve any notice in compliance, or attempted compliance, with section 24. The owner did not demand of the builder a schedule under section 5, but the builder furnished him, the owner, two schedules in attempted compliance with the provisions of that section, the first of which is admittedly bad and to be disregarded. The second was furnished February 20, 1913, and purported to be a verified statement in writing of the names and addresses, not only of all parties furnishing material or labor and the amount

due, but also the names of parties who had made bids or proposals for subcontracts or for material, and the amount of such bids or proposals where same have not been let or accepted. There were seventeen of those items set out in the statement, one of them being, F. J. Lewis Manufacturing Co., $1,150, tar, and nothing in the statement from which it could be ascertained whether F. J. Lewis Manufacturing Company was one of the parties that had a subcontract, or one of the parties who had made a bid that had not been accepted. It is suggested by appellant, though not much argued, that this statement should be construed as a compliance with said section 5, which not only makes it the duty of the owner to require a statement, as before pointed out, but also makes it the duty of the contractor to give the owner a statement. It is true if a statement in compliance with the provisions of section 5 had been voluntarily furnished the owner by the builder, appellant would have been protected thereby, and it is therefore material whether this was such a statement. Appellee argues that it was not for several reasons, among them the reason above suggested that it cannot be construed as a notice that any amount was due or to become due the appellant. We think the point well taken, and without discussing other suggestions of appellee as to the sufficiency of the statement under the statute, we hold that it was not a compliance with the statute, and that the case must be considered as though no notice of appellant's claim had been served by the builder on the owner.

The owner had, before the commencement of this suit, paid to the contractor, and on his account to various subcontractors and laborers, sums of money at various times amounting to its full indebtedness, and all was paid before the 20th of February, 1913, the date when the above statement that we have held

bad was served on the owner, except one item of $900 paid March 25, 1913, to a subcontractor.

As we have seen, the Mechanics' Liens Act of the Legislature provides, in substance, that an owner making payments to the original contractor, without requiring or receiving from such contractor a statement of the claims of subcontractors, does so at his peril, and also provides that a subcontractor wishing to avail himself of the benefits of the act must serve a notice of his claim on the owner within a time and in a manner provided. What are the rights of the owner and the subcontractor if neither has complied with the above provisions of the statute is the question here presented. Appellant must rely entirely on the statute for his right of recovery. Mechanics' liens are not in the absence of statute recognized by the common law or in equity. Therefore the statute must be strictly construed. *Turnes v. Brenckle*, 249 Ill. 394; *Schmidt v. Anderson*, 253 Ill. 29; *LaCrosse Lumber Co. v. Grace M. E. Church*, 180 Ill. App. 584. A party securing a lien under the Mechanic's Lien Law must show compliance with its provisions. *Cary-Lombard Lumber Co. v. Fullenwider*, 150 Ill. 629. Our Supreme Court held, construing the Mechanics' Liens Act as amended in 1887, which provided for statements to be made to the owner by both the contractor and the party desiring a lien, that while the owner had the right to refuse payment until the contractor furnished the statement required by law that the right of the subcontractor to a lien did not depend upon the omission of the owner to do or perform any act, but did depend upon something he, the subcontractor, must himself do unless the necessity was avoided by the act of the original contractor in furnishing the sworn statement. *Butler & McCracken v. Gain*, 128 Ill. 23. But that act was not, in these respects, identical with that of 1903. We are referred to no case, and know of none, directly determining the question here presented as

to the construction of the Act of 1903. It is claimed by appellant's counsel that the question was presented to the Supreme Court in *Rittenhouse & Embree Co. v. Warren Const. Co.*, 264 Ill. 619, and was not passed on because the case was decided on other grounds. It appears on page 623 of the opinion that the builder made payments to the contractor without obtaining statements from the contractor, as provided in section 5, and the trial court held under the provisions of sections 21 and 32 (J. & A. ¶¶ 7159, 7162) that the builder could not claim credit against the subcontractor because of that fact, but it does not appear that the subcontractor had failed to make the statement provided in section 24. If it did so appear the case would be authority in support of appellant's contention here, for the court said on page 620: "There is no controversy * * * that appellee took all of the necessary steps to perfect a mechanic's lien under the Mechanic's Lien Law of 1903." In the case of the *American Radiator Co. v. Blakie*, 165 Ill. App. 404, sections 5 and 32 of the Act are quoted and commented upon, and it is said that the builder, not having required the statement provided in section 5, did not, by payment of the amount due the original contractor, relieve his property from a lien in favor of the subcontractor there under consideration. But it affirmatively appears in that case that the subcontractor had complied with section 24 in giving notice of his claim to the owner. It is held in *Knickerbocker Ice Co. v. Halsey Bros.*, 262 Ill. 241, that where a subcontractor does not serve the notice required of him, the owner has a right to rely upon an original contractor's statement furnished under section 5. In that case the owner had acted on such statements and they were false, and the court said on page 245: "If any subcontractor is not satisfied to rely upon the contractor in the making of these statements and to abide by the statements as made, it is his privilege, under the

statute, to serve an independent notice upon the owner, of the amount due or to become due under his sub-contract, which shall bind the owner notwithstanding any statement made by the contractor. In the absence of any such notice served by the subcontractor the owner has the right to rely and act upon the sworn statements made to him under said section 5 by the contractor, unless he knows, from any source, that the same are false.''

It is therefore settled law that in case the sub-contractor makes no statement under section 24, and the original contractor makes false statement under section 5, the owner is protected in acting on that false statement, but the subcontractor is protected to the extent of any amount named in such false state-ment as due or to become due to him. To this extent the burden is placed on the subcontractor to see that a correct statement is made by the original contractor to the owner, and, if so made, there is no necessity for him, the subcontractor, to protect himself by com-plying with the provisions of section 24. But if a false or incorrect statement is made under section 5, then the subcontractor must protect himself by mak-ing the statement required by section 24. It seems to us reasonably to follow that if the subcontractor makes the necessary investigation as to the statement fur-nished by the original contractor to the owner, and instead of learning that a false statement to his detri-ment has been made, he learns that no statement in compliance with the law has been made, that he should then be required to make the statement provided in section 24. That section does not, in terms, limit the requirement to cases where the original contractor's statement is incorrect. It absolutely requires the sub-contractor to make it as a condition precedent to establishing his lien. It is easily perceived why he should be relieved from making it if the owner was already furnished by the original contractor's state-

ment with the information required to be given him by the subcontractor. The purpose of these enactments was to give the owner notice of claims that might be the foundation of liens against his premises, and also to protect such claimants, and it does not seem to us that a subcontractor, himself in default in observing the mandate of the statute, should be permitted to establish a lien against the owner on the ground that he, the owner, was also in default in observing a statutory requirement, which observance might have apprised him of the subcontractor's claim and relieved the subcontractor of the statutory duty imposed upon him.

We are of the opinion that under the Act of 1903, as well as under the law in force in 1887, the right to a lien cannot be made to depend alone upon the omission of the owner to do or perform the duty imposed upon him by the statute.

Appellee suggests other reasons for affirming the decree which may have some force, but we are asked by both parties to construe this statute, and have concluded to let our decision rest on that ground. The decree is affirmed.

*Affirmed.*